POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 07-12886-B-13 |
| Rene Ovalle, | DC No. SL-1 |
| Debtor. | |

**MEMORANDUM DECISION REGARDING DEBTOR'S MOTION TO CONFIRM FIRST MODIFIED CHAPTER 13 PLAN**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

Scott Lyons, Esq., appeared on behalf of debtor, Rene Ovalle (the "Debtor").

Michael H. Meyer, Esq., appeared in his capacity as the chapter 13 trustee (the "Trustee").

Before the court is the Debtor's motion to confirm a first modified chapter 13 plan (the "Plan"). The Trustee objects to confirmation of the Plan based on his contention that the Plan does not require application of the Debtor's "projected disposable income" to fund the payment of unsecured claims pursuant to 11 U.S.C. § 1325(b)(1)(B). The Trustee contends, *inter alia*, that the Debtor's "disposable income" calculation includes excessive living expenses resulting in a reduced distribution to creditors. Because the Debtor did not produce documentation to support his living expenses, the Trustee's objection will be sustained.

This memorandum decision contains the court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 1325 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (L) and (O).

**Background.**

This bankruptcy was filed as a voluntary chapter 13 on September 12, 2007. The Debtor is employed as a surgical technician at Clovis Community Hospital. He is a single parent with two minor children. On Form 22C (the "Means Test"), the Debtor reports receiving an average monthly income over the six months prior to bankruptcy in the amount of $6,735.60. From that income, the Debtor has deducted expenses, including living expenses and estimated payments on priority and secured claims, in the amount of $6,059.42. The resulting "monthly disposable income" on line 58 of the Means Test is $676.18. On amended Schedules I and J, the Debtor reports an estimated average monthly income (after payroll deductions) of $5,046.72, and estimated monthly expenses of $4,667.43, leaving a "monthly net income" of $379.29.

The Debtor's Plan provides for monthly payments to the Trustee in the amount of $379 for 60 months. The Plan provides for a 9% distribution to unsecured creditors with claims in the estimated amount of $158,828.32, a distribution of $14,295. The Trustee contends that the Debtor's living expenses are too high and that the Debtor should be paying $926.37 per month to fund administrative expenses and unsecured claims. He contends that the unsecured creditors should receive a distribution of $53,182.20. The Debtor contends that his living expenses are necessary and reasonable and that he can only afford to pay the amount provided in the Plan.

/ / /

/ / /

/ / /

**Analysis.**

To understand the issue here, it is necessary to journey through the statutory maze that was created with the passage of BAPCPA.[1] Beginning with Bankruptcy Code § 1325(b)(1)(B), a chapter 13 plan may not be confirmed over the objection of an unsecured creditor, or the chapter 13 trustee, unless it provides for payment of the debtor's "projected disposable income" to the allowed claims of unsecured creditors. The objecting party has the initial burden of proof to show that the debtor is not applying all of his disposable income to plan payments in compliance with § 1325(b)(1)(B). *Itule v. Heath (In re Heath)*, 182 B.R. 557, 560-61 (9th Cir. BAP 1995) (citations omitted). The burden then shifts to the debtor, "as the party with most access to proof on the point, to show that the budget submitted is reasonable and that the objection lacks merit." *In re Crompton*, 73 B.R. 800, 809 (Bankr. E.D.Pa. 1987) (citation omitted).

The term "projected disposable income" is a calculation that begins with the Debtor's "current monthly income" defined in § 101(10A). The Debtor's income, from all sources, must be listed on the Means Test. The Means Test determines, *inter alia*, which statutes govern the calculation of "disposable income" and how long the debtor's chapter 13 plan must provide for payment to unsecured creditors. Here, the Means Test shows that the Debtor's monthly income exceeds the State of California's median income making the Debtor an "above median income" Debtor.[2]

From the current monthly income, the Debtor may deduct "amounts reasonably necessary for the maintenance or support of the debtor or a dependent." § 1325(b)(2)(A)(i). For "above median income" debtors, the term "amounts reasonably

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23 (BAPCPA).

[2] The Means Test reports an annualized current monthly income of $80,827.20. The median family income in California for a debtor with two dependants is stated to be $59,086.

necessary for maintenance or support" in § 1325(b)(2)(A)(i) is determined with specific reference to § 707(b)(2), subparagraphs (A) and (B). § 1325(b)(3). Section 707(b)(2)(A) allows a debtor to claim living expenses based, *inter alia*, on the National and Local Standards issued by the Internal Revenue Service ("IRS Standards").

If the IRS Standards are not adequate to meet a debtor's particular circumstances, then § 707(b)(2)(B) allows the debtor to justify additional expenses based on a showing of "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces." § 707(b)(2)(B)(i). The Debtor has the burden of proof to establish those "special circumstances" through an analysis involving a four-part inquiry. For each additional expense claimed, the debtor is required to (1) show that there is no reasonable alternative for the additional expense (§ 707(b)(2)(B)(i)), (2) itemize the additional expense, (3) provide documentation for the expense, and (4) provide a detailed explanation of the special circumstances that make the expense necessary and reasonable. § 707(b)(2)(B)(ii).

This matter was tried before the court and the Debtor had an opportunity to give testimony and present evidence with regard to his actual living expenses and his "special circumstances." The Debtor's only exhibit was a copy of his original Schedule J (Statement of Current Expenditures of Individual Debtors).[3] At trial, the Debtor orally verified the expense figures stated in Schedule J. However, he produced no documentation to support any of the claimed expenses. Although the "special circumstances" inquiry has four parts, in the absence of any documentation to support each claimed "special" expense, the court does not need to consider the remaining three "special circumstance" factors.

In response to examination by the Trustee, the Debtor acknowledged that his claim for food and clothing exceeded the allowable IRS Standards by approximately $158 per

---

[3]At trial, the court also admitted the Trustee's exhibits, a copy of the Debtor's Means Test and the Debtor's amended Schedules I and J.

month. The Debtor explained that the higher figure was a function of the fact that he works excessive hours in a hospital. The Debtor testified that the stated "food and clothing" expense was based on personal knowledge of his living expenses. However, he produced no documentation to corroborate his testimony and to show what he actually spends for food, clothes, or any other item in this category. The Debtor testified that he pays a very high expense for continuing education ($80 per month) and storage of records ($100 per month) related to his profession in the medical industry. This testimony was unsupported by any statements, receipts, or other documents to show what he actually pays.

Similarly, the Debtor's claim for transportation expense exceeds the IRS Standards by approximately $134 per month. The Debtor explained that he often works "on call" for the hospital and that he may drive 2,000 miles per month going to and from work. The Debtor produced no documentation - gasoline receipts, car repair bills, etc. - to show how that travel demand actually translates to cost. Further, he produced no evidence or analysis to show how much travel mileage and related expense is already provided for in the IRS Standards.

Finally, the Trustee established that the Debtor's claim for utilities exceeds the IRS Standards by $78 per month. Again, there was no documentation to support this stated expense. Without adequate supporting documentation, the Debtor's efforts to explain the excess expense is meaningless in light of the plain language of § 707(b)(2)(B)(ii).

With the enactment of BAPCPA, the practice of consumer bankruptcy law changed forever. Congress intended to require debtors to "make a good-faith effort to repay as much as they can afford." *Pak v. eCast Settlement Corporation (In re Pak)*, 378 B.R. 257, 265 (9th Cir. BAP 2007). The Means Test is a starting point for determining what the debtor can afford to pay his or her creditors, but it was not intended to prescribe a "one size fits all" standard for all who may need bankruptcy protection. Indeed, in *Pak*, the court observed that, "the 'plain meaning' interpretation of 'projected disposable income' takes leave of reality" when applied to debtors whose incomes change

dramatically during the six months preceding their bankruptcies. The *Pak* court explained that this is not a "one-way" problem but can either result in "money left on the table that otherwise could be paid to creditors," as well as precluding debtors from proposing a feasible chapter 13 plan where their income has decreased. The court referred to *In re Mancl*, 375 B.R. 514, 517 (Bankr.W.D.Wis. 2007), writing: "'Blind adherence to the [Means Test] for the determination of a debtor's income could lead to arbitrary results based solely on the timing of the petition, potentially penalizing both debtors and creditors unfairly.'" The "special circumstances" addressed in *Pak* related to a change in the debtor's income. However, the same rationale is applicable when, as here, the Debtor needs an opportunity to explain and justify living expenses which do not fit within the IRS Standards.

One of the consequences of BAPCPA is that it imposes a significant "record keeping" burden on those who come to the bankruptcy court for relief. To the extent that pre-BAPCPA debtors may have been able to prepare their bankruptcy schedules based on personal recollection and good faith estimates, that practice no longer works in the post-BAPCPA world. The "record keeping" burden applies to all filers, but it is particularly important for "above median income" debtors. As illustrated above, a chapter 13 debtor who cannot afford to pay the "disposable income" reflected in his Means Test, must prove "special circumstances" to vary from the IRS Standards. To do that, the debtor must be prepared to itemize, *document*, and justify any exception with a detailed explanation.

Ideally, those records should be compiled at the time the petition is prepared and they must be retained for future use in the administration of the case. Post-BAPCPA bankruptcy practitioners now have an obligation to identify and assure the preservation of supporting documentation from their clients at the outset of a case. This is especially true where it appears that the debtor may need to rely on "special circumstances" pursuant to § 707(b)(2)(B) to overcome the presumption of abuse in chapter 7, or to get a plan confirmed in chapter 13. The debtor and his or her counsel must be prepared to establish

those "special circumstances" through credible documentary evidence. Presumably, the debtor who would provide that documentation and analysis to the trustee early in the case may be able to negotiate a workable resolution with the trustee, thereby avoiding the trustee's objection and the burden of an evidentiary hearing in the first place.

The new "record keeping" requirement under BAPCPA does not affect just the projected "disposable income" test in chapter 13. In all bankruptcy cases, debtors have a duty under § 521(a)(1) to file a complete and accurate list of their creditors and to candidly disclose their assets, liabilities, income and expenses. Under § 521(a)(4), a debtor must surrender books and records and cooperate with the trustee and/or auditor. Section 28 U.S.C. § 586(f) permits the United States Trustee to perform periodic audits of cases to determine whether the income and expenses stated in the schedules are complete and accurate. It would be virtually impossible for an attorney to assist his or her client through that audit without some documentation to establish a basis for those items being audited. In chapter 7, if the debtor's "disposable income" shows that an "above median income" debtor can pay at least $10,950, or 25% to unsecured nonpriority claims over 60 months, then the entire bankruptcy is presumed to be an abuse of chapter 7. § 707(b)(2)(A)(i). The presumption of abuse can only be rebutted by establishing "special circumstances" as set forth above. Finally, under § 707(b)(4) subparagraphs (C) and (D), debtor's counsel has a duty, equivalent to that under Rule 9011, to perform a reasonable investigation into the circumstances giving rise to the petition. The court in *In re Robertson*, 370 B.R. 804 (Bankr. D.Minn. 2007), though critical of the wording of § 707(b)(4), stated that the legislature made its point explicitly:

> [T]heir general drift is clear: debtors' counsel are to exercise significant care as to the completeness and accuracy of *all* recitations on their clients' schedules, after they have made a factual investigation and legal evaluation that conforms to the standards applicable to any attorney filing a pleading, motion, or other document in a federal court. The content of a debtor's petition and schedules is relied on, and should have the quality to merit that reliance.

*Id.* at 809 n.8.

///

**Conclusion.**

In this case the Debtor simply did not bring adequate evidence before the court upon which it could make a finding of "special circumstances" which would warrant the deduction of living expenses above those allowed in the IRS Standards. The statutes that prescribe the requirements for a showing of "special circumstances," are clear and unambiguous. The debtor who cannot adequately document the "special circumstance" relating to any variation from the income and expenses defined in the Means Test will not be able to confirm a chapter 13 plan over an objection of an unsecured creditor or the chapter 13 trustee.

Based on the foregoing, the Trustee has satisfied his initial burden of proof to show that the Plan does not comply with § 1325(b)(1)(B). The Debtor has failed to sustain his burden of proof to justify the "projected disposable income" figure in the Plan. Accordingly, the Trustee's objection will be sustained. The Debtor's motion to confirm his First Modified Plan will be denied.

Dated: April 4, 2008

W. Richard Lee
United States Bankruptcy Judge